Good morning everyone. Judge Scanlon and I would like to welcome and thank Judge Vance from the Eastern District of Louisiana who is sitting with us today. Welcome and thank you Judge Vance. Thank you. It's an honor to be here. It's our pleasure. The first case on calendar has been submitted on the briefs Sosa v. Berryhill. The first case on calendar from Argument v. United States v. Figueroa-Beltran. Good morning. Good morning. May it please the court. Kristen Thayer for Abel and Mr. Figueroa-Beltran. I'd like to reserve five minutes for Abel and I'll keep track of my time. All right. The main issue in this case is whether Mr. Figueroa-Beltran's conviction under Nevada Revised Statute 453.337 qualifies as a drug trafficking offense for the 2-0 guideline, the old version of the guideline. The government agrees that the Nevada statute is over broad, that Nevada law criminalizes more drugs than federal law. So the question becomes whether the statute is divisible. That is specifically whether the identity of the controlled substance is an element of the offense or whether Nevada's drug schedules merely list the alternative ways or factual ways that a defendant can violate the statute prohibiting possession with the intent to sell the controlled substance. That's the issue for the court. In this court's recent vote on the decision of Martinez-Lopez, the court reaffirmed that what the Supreme Court said in Maffinis, which is that to assess the divisibility of the statute, it's very important to look at the state's Supreme Court decisions, the positive decisions of the state's Supreme Court. Here, that case is Sheriff v. Luckman. And in that case, that Nevada Supreme Court case, the defendant was charged with violating 453.337. And the defendant mounted a constitutional challenge to his prosecution. He argued that the 1981 amendments to Nevada's drug control substance framework was unconstitutional, and a little bit of background to explain that argument. Before 1981, the Nevada legislature specifically listed out each schedule of drugs in the statute, the Nevada revised statutes. So there was a statute for Schedule I, Schedule II, and so forth. So the Nevada legislature controlled the substances that were criminalized. In 1981, the legislature abolished those statutes and delegated the power to set the state's statutory schedules to the state pharmacy court. So the pharmacy court now sets the schedules in the Nevada Administrative Code. Going back to Luckman, what the defendant challenged was the constitutionality of that delegation. Specifically, the question was whether that 1981 amendment, quote, unconstitutionally delegates to the state board of pharmacy the legislative power to define the elements of a crime. Counsel, what do we do with our case, the U.S. v. Benitez-Perez? Yes, Your Honor. In Benitez-Perez, a 2004 decision by this court, it does not control this case because in that case, neither party asked the court to address the divisibility of 453.337. Instead, Benitez-Perez found that under the categorical approach, the Nevada statute was a match. But in this case, it's an entirely different posture. The government agrees that it's overbroad. So now there's a new question for this court to decide, which is whether the statute is divisible in light of the arguments and positions in this case. Okay. I understand what the Luckman case is not the one you're getting to. I understand that it said that this was not a nonconstitutional delegation because it was establishing the way she would violate the statute. Yes. Yes. But why couldn't the Nevada statute still be read as establishing different crimes for the three main drugs and Schedule I and Schedule II or, well, I didn't mean it or, I meant or. Why couldn't it have been read that way as establishing even on Chapter I? That potentially could do a treat of statute. I would submit that that is placing a lot of emphasis on the existence of the word or in the statute, which Mathis and this court in Martinez-Lopez has now cautioned against, as far as consistently, since we're not a beholder, explained that the presence of or in a statute does not necessarily mean divisibility. It's too mellow, and so it could still be a list. But in that situation, if the statute were divisible as to the enumerated three drugs and or any controlled substance classified in Schedule I or II, that still doesn't solve the overpress issue in this case. Why not? Because the divisibility, if it were divided that way, the element would be or any controlled substance classified in Schedule I or II, and that's the entire problem, is that in Nevada, Schedules I and II criminalize, both those schedules criminalize more drugs than federal law. So even if the statute were divisible between the enumerated being an element and the controlled substance in Schedules I or II being an element, it's still overbroad. Yeah, so the government has referred to two cases in their 28-J letters, Sheriff v. Shade and Richard v. Stink, to suggest that the defendant was charged in separate counts with two different types of drugs and had presumed victimism. What's your response? My response would be that those cases do not resist the court in assessing the divisibility of 453.337.  Whether there was a multiplicity or issue, whether simultaneous possession with the intent to sell of two different substances can be broken into two offenses. The state courts are asked to explicitly make those kinds of determinations because those issues are not made before the state court. So we have to look to the rulings that the state court made to determine whether or not how the state court assesses the elements. Yes, Your Honor, and I would submit that in Shade and Richard, the court was asked to address the sufficiency of the evidence, so I mean factual challenges to whether the government had proven its case. The defendant never asked for dismissal of one of the counts, so whether a person could be convicted off-line of the simultaneous possession and sale or possession with the intent to sell of two different substances in two different counts, whether that's constitutional or allowed, a scheme was not before the court. The defendant didn't raise that argument, and it's their fairly summary decision saying, yes, there's sufficient evidence. We affirm. So really it's not a question that these defendants asked the Supreme Court. For whatever reason, they didn't ask the Supreme Court to decide. So is it your argument that under Nevada law, element of charges involving different drugs can be alleged in the same count? Yes. It's because it's not elemental. Under law coming, which says the Nevada pharmacy board cannot set the elements of the offense, the pharmacy board providing a list of scheduled substances, each of those substances is not an element. It's a means. It's a way to violate this charge. So they can be charged, you know. Does the jury have to determine what controlled substance was possessed or sold or trafficked in Nevada? There are no model instructions in Nevada, so we don't have any evidence of that. What do the cases say? Are there any cases that address this issue? No, Your Honor. There's actually a lack of case law on, like, specific challenges to convictions under this drug statute and other drug statutes that I've looked into. If this is error, why is it an error also? It's not an error because this is a procedural error. Whether the 16-level enhancement applies to enhance Mr. Fertitta. But if the judge said, oh, it's going to give this 41-month sentence, that would be great because I think that criminal history category is underrepresented in light of his arrest for a lot of drugs, and he stole a motorcycle and guns, and his recent arrest history. So why, if he says he's going to give the same sentence anyway, why is it an error? It's not an error because the court must correctly calculate the guidelines before sentencing a defendant. But the judge knew what the guidelines were because the lawyer was arguing if you take out the 16 points, the guideline calculation is going to put the criminal history category of 2, and the 4 points for any felony offense. The lawyer told him what it was, so it's easy enough, and told him what the guideline for the sentence was, and gave him the option of points. So it's not like the judge didn't know what it was, and he still said I would give him the 41 months. So it's not like he didn't know what it was because it was plainly discussed. Yes, Your Honor, and I would direct you to pages 20 and 21 of the reply brief, which is citing the Munoz-Camarena case in this circuit, which held that a district court's mere statement that it would impose the same above-guideline sentence, no matter what the correct calculation is, cannot without more inflammation. So that presumes that the judge didn't calculate the guideline range, he was unaware, and didn't make a conscious determination of how much he would leave the guideline range to arrive at the same sentence. And I'm saying if you've got a record where it's apparent that the guideline range was in front, the alternate guideline range was in front of the judge, and the judge has good reasons to say why he would have imposed the same sentence by virtue of the criminal history, why that is not. I understand what case you're citing, but I don't know why this isn't different. It's not different because the court's analysis must flow from the correct guidelines range, and the district court must decide that calculation and keep that in mind, a correct guidelines calculation, and keep that in mind throughout sentencing. This was an after-the-fact justification for the guideline that the district court would have imposed the same sentence, but it was procedurally erroneous. It's flowing from that 41, the number 41 months, only was in the district court's mind because of the erroneous guideline calculation of 41. But that's not correct because the district court said that even if it accepted the arguments that the 16 levels of the instrument did not apply, that would imply that his criminal history is substantially underrepresented and would arrive at the recommended sentence of 41 months. Represented. So what do you say to that? I would say that this court's precedent doesn't allow a harmless error analysis for a procedurally erroneous guidelines calculation. The case I edited is Nuno's Camarena, and it's not what was examined in that case. In that case, I'm sorry, I am not recalling the specific enhancement issue, but it was an explanation of when it was a trial in the area where the judge did. If the judge just said at the end, I would get the same sentence anyway. I would have to look back at the hearing. There was a more developed record that the judge actually had a sentence where it was obvious what the alternative guideline would be without the enhancement that was before him and being fought over. So it was obvious what the guidelines would be otherwise, and then he says, okay, even accepting that you would have an 8, which would take you to, I forgot what the range was, but it was in the brief. Even accepting that that is what the guideline range would be with your argument that the 16 points don't apply, I would still give him the 41 months, whether the Nuno's case that you're relying on involves similar facts or whether it was just a statement by the district judge, and even if I'm wrong, I'd give him the same sentence. I cannot reply, Your Honor. I do apologize. No, so this is the kind of case that we should certify to the Supreme Court of Nevada to help us out. This Court, of course, can do that. I don't think that it's necessary because of the Luckman decision. It's a constitutional ruling on the separation of powers in Nevada, in Nevada's three branches, so it's a powerful ruling on the legislature. It can only define elements that the pharmacy board cannot. So it's not necessary. I thought you said there wasn't any precedent in Nevada talking about separating out the elements of the statute to determine whether or not each charge involving a different controlled substance must be set out separately. So there's nothing in Nevada that elucidates that, so why wouldn't it be prudent to certify it? I apologize, Your Honor. What I meant was that Luckman decides the elements, means, issue. There's just not a case where a criminal defendant has said, you cannot charge me for simultaneous possession with intent to sell two substances in two counts, which is what the government used. He's arguing those two new cases on Friday, that those cases, because the defendant didn't argue that, that it's acceptable, when really that would be a multiplicitous charging. It would be improper. So, yeah, so there's a lack of published case law, but Luckman does decide this issue is a matter of law. And I see that the others are clear sometimes. All right, thank you. We'll give you a minute for a follow-up. Okay, thank you. Thank you. Good morning, Your Honors. Nancy Olson here on behalf of the government. We appease the court. Counsel identified the correct question in this case, which is whether the Nevada drug statute is divisible by controlled substance type. And I'll start where she did with this court's recent en banc decision, Martinez-Lopez. Martinez-Lopez does say that this court has to look to, look for a controlling state supreme court decision on this question of elements versus means. The problem is, however, that Mr. Giger wrote a bill trying to maintain that Luckman is that decision. It is not that decision, however, for a couple of reasons. First, it's never been cited for that proposition. Second, we need to look at the court's reasoning and holding in the case. Even though in the introductory portion of the case it references the question as framed by the defendant, if you look at what the court's reasoning is doing and what the holding says, it's asking whether there was improper delegation based on letting the pharmacy board dictate penalties. And so the question was not, is this improperly assigning elements to the pharmacy board? It was saying, can the pharmacy board decide the penalty? And that is how it framed the defendant's challenge. That's particularly at page 110 of the decision. The court did not say the identity of a controlled substance is not in common, but rather it said, since the penalties for violating the act have been established by legislature, this is not an unconstitutional delegation of legislative authority. So if you look at the reasoning and the holding of the case, it was really speaking only to that, whether that delegation was permissible and particularly whether it was assigning the penalties. And the answer is no. So we decided to assign Luckman because it is not answering the question that's before the court today. And so 1985 case, is there been anything since then that is interpreted the way you have? No. Excuse me. We're relying on Mueller, which is actually a 1977 case. But I'd like to explain why the year does not matter in this instance. Even though in 1981 there was some modification to the way that drugs could be scheduled, it was not so sweeping of an overhaul as has been presented. When citing the Luckman, I want to track the court to section 453.146. Under that section, the Nevada Pharmacy Board always had the ability to add, delete, modify, by regulation, substances to those schedules. So even where they used to be in the revised statutes and now they're in the administrative code, the board always had that authority. This was simply saying that the board was going to take over the role instead of having a dual authority, but this was now something new where the board previously was not involved and then became involved. But Mueller, that you're relying on, was under a different statute. 453321 was about keeping it. That's correct. Did you learn before Nevada changed the way junk drugs were scheduled? With regard to the different statute, if you look at the cases that Mueller cites in order to reach its conclusion, a different group is required because there were two substances. It cites a variety of out-of-state cases, and those cases involve a variety of drug statutes. So, for example, there was a sales statute, there was possession with intent statute, there was a plain possession case. And so the Mueller court was not basing its conclusion on the fact that in trafficking cases alone, here is what the rule is. What it was saying was in controlled substances cases, and it could be any of a variety of those charges, whether it's heroin or cocaine matters, and that's what has to be proven. And I'll also note that in those handful of cases that cited four different out-of-state authorities, one of them framed the question, the Tennessee case, Campbell, framed the question with regard to whether two different drugs have two different schedules are set for crimes. However, other cases did not. So Mueller was not having such a particular holding regarding this is schedules only. It was talking about controlled substances broadly and proving that separate identity is a separate element. And I'll also point the court to the Lopez decision that Mueller cited. You'll recall from their recent Hong Kong decision and Martinez-Lopez, this court held that the similar California statutory scheme was divisible, the controlled substance element, looking to California Supreme Court law. And in that law, the court started with a case called Anne Ray Adams, and it said Adams allowed this procedure and said you could have different charges for different drugs. And importantly, it said this court noted that Adams reaffirmed an older California case, Lopez, which said three different drugs, possession of three different drugs is three different crimes. And Mueller cited that exact same case, Lopez. So what we have here is Nevada Supreme Court and Mueller relying on the same that this court relied on in Martinez-Lopez to answer the divisibility question. And so even though there was some modification to the way drugs were scheduled, it did not give the board any new powers, and the Luckman court specified that it did not improperly delegate the ability to cite penalties. And so the age of the case and the particular nature of the case, trafficking versus possession with intent, was not important to the Luckman court. They held, I'm sorry, the Mueller court, they wrote their decision with broad language, and they made very clear that we're talking about the identity of controlled substance as the particular matter that needed to be proven. Counsel, would you object if we were to certify this question to the Nevada Supreme Court? My initial response, Your Honor, is based on Martinez-Lopez, and the application of madness there, as well as the fact that we have. Well, that just tells us step two in effect. Correct. But based on what this court did in Martinez-Lopez, I don't think that it would be necessary, because we do have Mueller. Now, in the event that. Mueller has some problems, and one of the problems I'm having is putting Luckman and Mueller together, and it's kind of tied in a certain direction, but it's still close enough that reasonable points could differ. Well, I think if we look at what Luckman was holding, which was whether the penalties were being delegated, we can see that it was not on point answering this question about divisibility, whereas Mueller was. And then with the more recent post-1981 cases the government cited, in last week's 28-J letter, we tried to find a few examples where this is how the charges are still being presented to courts. And one of the cases was not sufficiency of the evidence. One of the cases was a motion to dismiss regarding the way that the charges were alleged. Now, the court did not reach the difference of the elements as a specific question, but what it did do is it had to look at whether two counts could stand, and it looked at the evidence that was alleged to support the information and was alleged at the probable cause hearing, and what that was pertained to two different drug types. And so this court can look at that and say this is the practice in Nevada, and this is what has to be proven in order for this information to proceed to trial. Nothing has changed, Mueller, and so we maintain that it's not necessary for this court to certify it because we have a controlling Supreme Court case, which is what Mattis obstructs and which is what this court did in Martinez-Lopez. And then we also have the recent charging practices that show that those 1981 amendments did not change the landscape. I just want to address the comment that the judge made earlier about the sentencing. There was no procedural error in this case because the court did look at the alternative guidelines. So we had the court saying the 16-level enhancement does apply, and here's what the outcome is. And as the panelists recognized, the court did have an alternative finding, which implicit in that is to say even if that 16-level doesn't apply, therefore the guidelines would be lower. Then here are my reasons for including a higher sentence based on this defendant's particular background and his history of trafficking, offenses, and arrests. And so the court made a very clear record of what it was doing. So even if this court were to find that the enhancement didn't apply, this district court was very experienced and was very particular in what his concerns were about this defendant and his history. So there was no sentencing error. I have addressed at this point all of the arguments that were raised by Mr. Figueroa of Deltran's counsel. So unless the panel has any additional questions. So what's the response to opposing counsel's position that the King John part of the statute renders anti-overbroad? If you look at the 10th Circuit's decision in Israel, they addressed that where they said the statutes that divide us separate things by the drug and by the penalties. And so just because it's in Schedule I or II or in a different statute, three or four, that is not the end of the question. The government or the state has to prove what that drug is in order to sustain a charge under those different statutes, warranty different penalties. And so if you look at that court's reasoning, that's persuasive to say that it doesn't matter that there's a catch-all. That's the same situation that California in 11352 had in Martinez-Lopez. It can have cross-references to other schedules and still treat those as different elements of the offense. You wouldn't know if you would have found a reference in two schedules that are broader than the federal statute. Correct, because the question is divisibility. So if we answer that question, yes, it's divisible, then what the court has to do is step two, which is to say which particular drug was this defendant charged with. And so you look at the overbroad schedules, and in this case it was cocaine, and that appears on the federal schedule, and so that would be a match. Your opposing counsel said that the government agreed that the statute was overbroad. Was that an overbroad statement? We agree that the list of controlled substances criminalized in Nevada is lengthier than the federal schedule, so that is correct. And it has to say Nevada criminalizes more drugs. And so because Nevada does that, we have to answer divisibility. We've cited case law that is showing it's divisible. And then once you divide it and you look to the particular substance charged, we have cocaine in this case, which is unquestionably on the federal schedules. But based on your concession, that penalty has Perez-Dustin control. That's correct, because in that situation, it was not an issue of crack powder. It was categorical. That's correct. You're citing case law. We're saying we acknowledge there are more drugs scheduled in Nevada. Okay. Tell me about these different penalties. I'm not sure I'm following your argument, but there are different penalties for different drugs in Nevada in the same schedule. In the same schedule, the penalties are dictated by if you've had prior drug addictions before. So in this statute, Doctrine 3-7, it's Schedules 1 and 2, and then you look to the statute to say have you had prior, so it's a Category D or C or B felony and so on. And now the companion statute, 3-3-8, looks at the other schedules, 3, 4, and 5, and has a similar pattern, but it does not have as harsh a penalty. So, for example, you can have more convictions for 3, 4, and 5 drugs, and you don't ramp up to the harsher penalties as quickly. But if you're in a category, the drugs that cocaine is in the same schedule is one of the overbought drugs. Right. In Nevada. Is that right? I don't know which schedule you've ever mentioned, but they're categorized together like where the pharmacy port schedules exist in Schedules 1, 2, 3, 4, and 5. So they're kind of lumped together in that regard. But I thought that cocaine was in Schedule 1 in Nevada. Is that right? That's correct. And Schedule 1 has more drugs than the federal statute. The statute does not, right? Correct. And does Schedule 1 have different penalties for different drugs within that, or do they all get the same penalty? They're all the same to begin with. And only the increases from whether you have priors. But I highlighted the penalty scheme to make the point that the other statute has different penalties and different schedules. And so in order for that to have any meaning, you're going to have to prove the drug that it is. Because if you're alleging Schedule 1 and you're trying to get a higher, for example, class B company with priors, you're going to have to prove that you actually made that showing. And if it was a Schedule 3 drug, you're under the wrong statute, and the defendant could successfully file a motion to issue it. This is what this statute does not in comparison to the other statute. That's correct. I was just highlighting why you would need to prove the drug. Because in order to get this statute, you need to be in one of two. And then in order to do that, you would have to prove that the drug you're alleging is in Schedule 1 or 2. And we asked a different question. Do the drugs in Schedule 2 have a different penalty from Schedule 1? No, they do not. They fall under 3-3-7 as well. And I see that I am out of time, so unless the Court has any other matters, we ask the Court to affirm the statute is divisible. I also would note that using Martinez-Lopez, which relied on California law, and using Moeller, which also relied on Lopez, it's clear that Nevada requires proof of drug control substance identity. And so the 16-11 has no what's appropriate. There are also no procedural or substantive errors in the sentencing in this case. And we will submit on the brief summit of the sentencing issues. All right, thank you. Thank you. One minute for rebuttal. Thank you, Your Honor. Two quick points. First, this court doesn't have to reconcile Mueller and Luckman. Mueller addresses the prior Nevada drug control substance framework. Luckman addresses the current framework. So they're not cases that have to make sense together or be one or the other. Why just address the prior non-existent? I dropped your opponent's penalty argument that what Luckman was really talking about was penalties and not elements. Yes, Your Honor, that's not how I read Luckman. The specific question posed to the Nevada Supreme Court  The intro of the case sets the foundation or sets that issue out. The challenge is whether the legislature delegated elemental authority to the pharmacy board, which you could not in the Supreme Court. No, it didn't. But that was the focus of it, though. To me, Luckman was who had the authority to set the penalties. So I don't see that as being as focused on the issue as Mueller was. Your Honor, I would still submit that Mueller is addressing different statutes when the statutes... But it's the predecessor statute. Doesn't the analysis still follow? It's not the predecessor statute, Your Honor. Actually, it was addressing an actual sales statute. Right, but it still was talking about convictions for drug offenses and the fact that each particular drug had to be set for a separate count. So that's kind of what we're dealing with here. But it was at the time that the Mueller, the defendant, was charged in that specific manner. So the defendant was charged with the sales statute and the Schedule I statute for the heroin count. For the cocaine count, he was charged with the sales statute and the Schedule II statute. So it was all very statutory-driven. The way it was charged set forth the elements in that case under that statutory scheme. What about Martinez? I'm sorry. What I was going to say is on page 151 of the Luckman decision, it says, it sets forth the issues, and the first one was whether or not there was an unconstitutional delegation to the State Board of Pharmacy. The second was whether the amendment was unconstitutionally veiled. And the third one was whether there may be a health violation where the pharmacy board had not promulgated schedules. So to me, those issues don't seem to call for the analysis that we're looking for here. That's why I'm a little concerned that our reliance on Luckman may not be appropriate. I would submit it's just that first question about the delegation of the power to define the elements. That is in saying that the legislature set the elements, which it did, and it did not delegate elemental authority to the pharmacy board. So therefore, what's in the statute is the element. What's in the schedules as set by the pharmacy board is factual. It's the factual means to violate. And if I may want a case as to your question, Judge Vance, about harmless error, the Supreme Court's decision in Molina-Martinez, 136 Supreme Court 1338, addresses that it's a plain procedural error even if there's no objection, if the district court doesn't correctly calculate the guidelines. And in that case, it was even an incorrect guideline calculation, and the sentence actually imposed fell within the correct guidelines. So the Supreme Court still said it needs to be reversed and redone in that same scenario. Can you tell me about Martinez-Lopez and why that doesn't fix the problem? Martinez-Lopez addressed California's scheme, and really that's the aim criteria. There could be 50 different decisions or 50 different drug statutes all over the states, and Martinez-Lopez only instructs on the divisibility as to what California said about California's statutes, which are written very differently than Nevada. And there wasn't a case like Lutwin and Martinez. It's just there is, and the case goes a different way because the Nevada Supreme Court has spoken. In California, the California Supreme Court has spoken and said it was divisible, there were different offenses. So it simply sets the framework for the court, but it doesn't control the outcome because it's very Nevada-specific in this case. Thank you. Thank you to both panelists for your helpful arguments. In this case, the case is argued. It is submitted for decision by the court.
judges: O'scannlain, Rawlinson, Vance